UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

DAVID HENRY                                   CIVIL ACTION NO. 5:14-CV-03064

VERSUS                                        JUDGE WALTER

TIM KEITH                                     MAGISTRATE JUDGE HORNSBY

### REPORT AND RECOMMENDATION

#### Introduction

A Caddo Parish jury convicted David Henry ("Petitioner") of one count of distribution of Schedule II CDS (crack cocaine). Petitioner was adjudicated a fourth-felony offender and given a 50-year sentence. His conviction and sentence were affirmed on direct appeal. State v. Henry, 103 So.3d 424 (La. App. 2d Cir. 2012), writ denied, 109 So.3d 356 (La. 2013). Petitioner also pursued a post-conviction application in state court. He now seeks federal habeas relief on the grounds that (1) the evidence was insufficient, (2) the prosecution committed a Brady violation, and (3) his sentence was excessive. For the reasons that follow, it is recommended that his petition be denied.

#### Trial Testimony

Officer Trey Robinson testified that he was part of an undercover buy-bust operation that targeted a number of locations. One of them was a convenience store at the corner of Line Avenue and 74th Street in Shreveport, where there had been reports of drug dealing. Robinson as driver, and Officer Heather Flores as passenger, pulled into the parking lot in a car that was equipped with audio-video recording equipment, plus electronic equipment

that transmitted audio to an arrest team that was monitoring them from a nearby, but out of sight, location.

Robinson testified that Petitioner approached his car and asked him if he was a police officer. Robinson denied it, and then Petitioner asked him what he wanted. Robinson said he wanted some "hard," which is slang for crack, and handed Petitioner $20. Petitioner then walked over to another man (later identified as Jerry Jackson) who was standing on the side of the building, engaged in an exchange, and returned to the car. Petitioner placed the drugs on the ground outside the car door and said something to the effect that he would not hand Robinson the drugs in case he was the police. Petitioner walked off. Shenell Jones, who was with Petitioner that day, had been talking to Robinson while Petitioner went to get the drugs from Jackson. She said, "I will hand it to him," and then did so.

Agent Flores was in the passenger seat speaking on a cell phone during the transaction. She was talking to the arrest team (as backup audio) and, when the transaction was completed, she gave a signal. The arrest team then pulled into the parking lot and arrested the three people who Robinson identified as participating in the transaction.

Officer Heather Flores testified and corroborated Robinson's description of the events. Petitioner's co-defendants, Jerry Jackson and Shenell Jones, pleaded guilty and testified against him. They corroborated the significant events and implicated Petitioner in the sale of the crack cocaine. The audio and video recordings of the transaction were played for the jury, and Agent Robinson pointed out Petitioner and described his actions, which were consistent with Robinson's other testimony.

Robinson testified that the drugs seized in such transactions are almost always field tested at the time of arrest. If they test positive, the arrestees are charged with distribution of drugs. If the product seized is "bunk" or fake drugs, the arrestees are charged with a different crime regarding counterfeit drugs. Robinson had testified at a suppression hearing that the drugs field tested positive, but he admitted at the trial that he did not field test the drugs, and he was not certain who did. In any event, Bruce Stents, a chemist with the crime lab, testified that the seized substance tested positive for cocaine.

Deputy Sheriff Steven Ashcraft testified that he was the designated case agent, who provides a consolidation point for the paperwork, evidence, and related matters. He was on the arrest team, seated in back of a SUV parked across the street and about half a block away, so he did not have line of sight on the transaction. After the arrests were made, he did a quick debrief with Agent Robinson, and he later wrote a short report. Ashcraft said the report of the undercover agent would be more detailed.

Ashcraft testified that he collected two small bags of suspected crack at the arrest. It appears that one bag was the one sold to Robinson, and the other was likely seized from Jerry Jackson. Ashcraft said that the drugs were field tested, but he could not remember who did it. The crime lab findings, he explained, would be the definitive findings.

**Sufficiency of the Evidence**

Petitioner argues that the evidence was not sufficient to support his conviction. He was charged with violating La. R.S. 40:967(A)(1) which states that it is unlawful for any person knowingly or intentionally to possess with intent to distribute a controlled

dangerous substance classified in Schedule II. The jury voted 10-2 that Petitioner was guilty beyond a reasonable doubt of committing that crime.

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The Jackson inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 113 S.Ct. 853, 861 (1993).

Petitioner raised this challenge on direct appeal. The state appellate court set forth the Jackson standard and reviewed the testimony and other evidence in detail. Petitioner's main argument was that the prosecution did not prove that the crack offered into evidence as Exhibit 2 was the same crack cocaine distributed from Petitioner to Agent Robinson. There was some uncertain testimony about who collected the evidence, who may have field tested it, and the like. The state court noted that issues regarding the chain of custody go to the weight of the evidence, and connexity is a factual matter for determination by the jury. The jury heard all of the evidence, including defense counsel's cross-examination on this point, and found that the State had met its burden. The state court concluded that when the evidence was viewed in a light most favorable to the State, a rational juror could have returned a verdict of guilty. State v. Henry, 103 So.3d at 428-30; Tr. 498-505.

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary

to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews, 132 S.Ct. 2148, 2152 (2012); Harrell v. Cain, 595 Fed. Appx. 439 (5th Cir. 2015).

The state court's decision was an entirely reasonable application of Jackson. Multiple witnesses, including co-conspirators, testified that Petitioner delivered crack cocaine to the undercover officers in exchange for money. The chain of custody of the seized crack was not established perfectly at trial, but Robinson testified that the exhibit offered was seized at the scene, and the crime lab official testified that it was cocaine. There is no basis under the demanding Section 2254(d) standard to overturn the appellate court's decision to affirm the jury's verdict.

**Brady Violation**

Petitioner filed a motion in limine two days before trial and asked that the testimony of Agent Robinson be excluded because the State had not provided Robinson's police report despite a formal motion for discovery filed several months earlier. Tr. 123. The State filed a supplemental discovery response and included a copy of Robinson's report. Tr. 126-28. (The report is largely consistent with Robinson's testimony.) Petitioner moved for a continuance on the grounds that the report revealed the name of an additional law

enforcement official (presumably Agent Flores) who was present and "who could have been made available to the defendant for pre-trial hearings and a fact witness." The motion also argued that a report indicated (unspecified) conflicts with prior statements of other officers. Petitioner asked for additional time to explore those issues. Tr. 129-30. The trial court denied the requested continuance. Tr. 131. The trial started the next day.

Petitioner argued on direct appeal that the State did not comply with discovery rules and that Agent Robinson had testified that there was a list of the officers present at the time of arrest, yet the list had never been disclosed. Petitioner raised a <u>Brady</u> claim based on the alleged missing list and the late disclosure of Robinson's report. Tr. 561-66. He re-urged a <u>Brady</u> claim, based on the late disclosure of Robinson's report, on post-conviction. Tr. 574, 584-591.

On direct appeal, the appellate court rejected the discovery argument based on the application of state law and with the observation that Petitioner "failed to explain how the testimony of additional police officers would have produced a different result at his trial, or that he was prejudiced by the late production of Off. Robinson's report." The <u>Brady</u> claim regarding the purported list of officers was also rejected. The court said that Petitioner had not shown that the State failed to provide him with material evidence, and he raised no more than a "speculative possibility" that the list would contain exculpatory evidence. <u>State v. Henry</u>, 103 So.3d at 430-431; Tr. 505-08. The trial court denied the post-conviction claim as repetitive and for lack of merit. Tr. 662-663. The higher state courts denied writs because the claim was repetitive in violation of La. Code Crim. Pro. art. 930.4. Tr. 705, 765.

Petitioner's federal petition asserts that the late disclosure of Robinson's report (1) violated a Louisiana jurisprudential rule against "surprise testimony" and (2) supports a Brady claim. The state law arguments lack merit. Federal habeas relief may not be granted for mistakes made in the application of Louisiana discovery or procedural rules because "federal habeas corpus relief does not lie for errors of state law." Swarthout v. Cooke, 131 S.Ct. 859, 861 (2011).

To establish a claim under Brady v. Maryland, 83 S.Ct. 1194 (1963), a petitioner must establish that the evidence was (1) suppressed, (2) favorable, and (3) material. Wright v. Quarterman, 470 F.3d 581, 591 (5th Cir. 2006). Evidence is not "suppressed" if the petitioner either knew or should have known of the essential facts that would have permitted him to take advantage of any exculpatory evidence. West v. Johnson, 92 F.3d 1385, 1399 (5th Cir. 1996). Evidence is material if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 115 S.Ct. 1555, 1566 (1995). In short, a petitioner must show a "reasonable probability of a different result." Banks v. Dretke, 124 S.Ct. 1256, 1276 (2004).

The Brady claim was adjudicated on the merits in the state court, so habeas relief is available only if that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). The clearly established law requirement refers to holdings of the Supreme Court. A decision by a federal circuit court, even if compelling

and well-reasoned, cannot satisfy the clearly established federal law requirement under § 2254(d)(1). Glebe v. Frost, 135 S.Ct. 429, 431 (2014).

The Supreme Court has not clearly established that evidence turned over late, even during the trial, has been suppressed within the meaning of Brady. That forecloses habeas relief on this claim. Even if this court were to consider the holdings of circuit courts, the Fifth Circuit has held that such evidence is *not* considered to have been suppressed. Powell v. Quarterman, 536 F.3d 325, 335 (5th Cir. 2008); U.S. v. Walters, 351 F.3d 159, 169 (5th Cir. 2003) (collecting several Fifth Circuit decisions that denied Brady claims when material was produced during the trial.) See also United States v. Morrison, 833 F.3d 491, 508 (5th Cir. 2016), cert. denied, 137 S. Ct. 1098 (2017). In a claim is for untimely disclosure of Brady material, the Fifth Circuit looks to whether the defendant was prejudiced by the tardy disclosure. The defendant is not prejudiced if the evidence is received in time for its effective use at trial. Powell, 536 F.3d at 335.

The record shows that defense counsel made ample use of the report. He questioned Robinson and Ashcraft at length about perceived discrepancies between their trial testimony, testimony at pretrial hearings, and statements in the reports. Petitioner argues that if the report had been produced earlier he could have perhaps interviewed Agent Flores or conducted other investigation, but there is no indication that this would have led to the finding of material exculpatory evidence. Flores testified at trial that Petitioner was guilty. Petitioner has not demonstrated that the state court's decision was an objectively unreasonable application of Brady because the Robinson report was not suppressed and Petitioner has not identified any material exculpatory evidence that he lacked.

As for the list of officers, this issue appears to have arisen when counsel asked Robinson on cross-examination if he could tell him the names of the other officers involved in the case. Counsel said it was hard for him to get the information because the buy-bust teams included officers from different agencies. Robinson responded, "We can get you a list." Counsel said he was asking now, because the trial was underway. Tr. 281. Thus, it appears there was not an actual list already written. Robinson simply offered to put one together. In any event, the state court was reasonable in stating that Petitioner had nothing more than a speculative possibility that a list of police officers would contain exculpatory evidence. Habeas relief is not available on this claim.

**Excessive Sentence**

Petitioner was first sentenced for the crime of conviction, which carried a range of two to 30 years. The judge noted that Petitioner had an extensive criminal history beginning in 1975, with charges against him in almost every year between then and 2009. His convictions included burglary, battery, theft, drug use, and possession of a firearm by a felon. There appeared to be 12 felony convictions and over 20 misdemeanor convictions on his record. The judge said the presentence report was "incredible" and ranked number two or three among the ones he had seen to suggest a career criminal. He imposed the maximum 30-year sentence. Tr. 393-97.

The State then filed a multiple offender bill that sought to enhance the sentence for the conviction. The State offered some form of plea agreement, which Petitioner rejected, and the State promptly proved that he was a fourth-felony offender and subject to a sentence ranging from 30 years to life. The court found that Petitioner was 54 years old

but showed no signs of slowing down his criminal activity, so there was little promise that he could be rehabilitated. The judge noted that the State could have proved up even more felonies and required a mandatory life sentence. Faced with a range of 30 to life, the court imposed a sentence of 50 years. Tr. 401-22.

Petitioner argued on direct appeal that his sentence was excessive in violation of La. Con. Art. 1, § 20. Tr. 464-65. His writ application to the Supreme Court of Louisiana also relied on the state constitution, with no citation of the Eighth Amendment or related jurisprudence. Tr. 519, 525-27. His habeas memorandum invokes the state constitution but now has the additional argument that the sentence violated the Eighth Amendment.

Habeas relief does not lie for mere errors of state law. And a federal claim presented in a habeas petition must first be exhausted in the state courts. This requires that the claim be presented to the state courts within a federal constitutional framework. Scott v. Hubert, 635 F.3d 659, 667 (5th Cir 2011), citing Baldwin v. Reese, 124 S.Ct. 1347 (2004). The presentation of purely state law claim generally does not properly exhaust a federal claim. It appears that Petitioner may have failed to exhaust a federal claim with respect to his sentence. In the alternative, for the reasons given below, the claim lacks merit.

The Court in Lockyer v. Andrade, 123 S.Ct. 1166 (2003) reviewed its decisions and rejected a habeas attack on two consecutive terms of 25 years to life for a third-strike conviction. The petitioner had a string of burglary, drug, and property-crime convictions, capped by felony petty-theft after he stole approximately $150 worth of videotapes. The sentence did not permit habeas relief because it was not contrary to or an unreasonable application of clearly established gross disproportionality principle set forth in Supreme

Court holdings. The Court admitted that its precedents were not clear on the issue of disproportionate sentences, which makes it difficult to obtain habeas relief under the deferential Section 2254(d) standard.

Petitioner's crimes were much more serious than those in <u>Lockyer</u>, and his record was lengthy. Petitioner argues that 50 years is too stiff a sentence for selling a single rock of crack, but the sentence is imposed to reflect the seriousness of the most recent offense, not as it stands alone, but in the light of the prior offenses. <u>McGruder v. Puckett</u>, 954 F.2d 313, 316 (5th Cir.1992) (life sentence for auto burglary was not grossly disproportionate where habitual offender had prior convictions for robbery, burglary, and escape). The sentence imposed by the trial court was quite reasonable. The state appellate court's decision to affirm the sentence was also reasonable and does not warrant habeas relief.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 31st day of January, 2018.



Mark L. Hornsby
U.S. Magistrate Judge